IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VIRIUM BV, VFR HOLDING B.V., MAS ARBOS INVEST BV, and PIET MAZEREEUW BEHEER B.V., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 13-500-LPS |
| LITHIUM TECHNOLOGY CORPORATION, | ) ) ) | |
| Defendant. | ) | |

Theodore J. Tacconelli, Rick S. Miller, FERRY JOSEPH, P.A., Wilmington, DE.

Melvin A. Simon, COHN BIRNBAUM & SHEA P.C., Hartford, CT.

    Attorneys for Plaintiffs.

Carl D. Neff, L. John Bird, FOX ROTHSCHILD LLP, Wilmington, DE.

    Attorneys for Non-Parties Martin Köster, Graham Norton-Standen, Inventa (Luxembourg) S.A., John Dercksen, and Inventa Ltd.

**MEMORANDUM OPINION**

August 5, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION[1]

Before the Court is a dispute over attorneys' fees requested by Virium BV, VFR Holding B.V., Mas Arbos Invest BV, and Piet Mazereeuw Beheer B.V. (collectively, "Plaintiffs") in connection with a civil contempt order entered against Lithium Technology Corporation ("Defendant" or "Lithium") and against non-parties: Martin Köster, Lithium's former Chief Executive Officer; Lithium's former Chairman of the Board, Graham Norton-Standen; Inventa (Luxembourg) S.A., its Managing Director; John Dercksen; and Inventa Ltd. (collectively, the "Non-Parties"). For the reasons set forth below, the Court will grant Plaintiffs' fee request in full, including all additional fees and costs incurred in connection with this fee dispute.

## II. BACKGROUND

Plaintiffs commenced this action on April 1, 2013, seeking specific performance of a promise to secure obligations under certain Convertible Promissory Notes. (D.I. 99 at 3-4) At the conclusion of a full-day bench trial on Friday, July 25, 2014, the Court ruled in favor of Plaintiffs, granting money damages, specific performance in the form of a security interest to Plaintiffs, and an injunction against granting any security interests to other parties without prior written consent of the note holders. (*Id.* at 4) Lithium requested that entry of the final order be delayed, ostensibly to allow time to review the proposed language of the injunction. (*Id.*) The Court entered a Status Quo Order to preserve the positions of the parties and set a deadline of 3:00 PM on Monday, July 28, 2014, for the parties to negotiate the proposed language. (*Id.*; D.I.

---

[1] Unless otherwise indicated, all facts are taken from supporting briefs submitted by the parties and the case record.

1

36) Lithium was non-responsive for most of the weekend, eventually agreeing to the original language on Sunday, July 27, 2014. (D.I. 99 at 4) The proposed injunction was submitted to the Court at approximately 3:00 PM on July 28, and the Court entered a Final Judgment Order later that day. (*Id.* at 5; D.I. 39)

Plaintiffs' counsel later discovered that, minutes before the 3:00 PM deadline, and while the Status Quo Order was still in effect, UCC-1 Financing Statements had been filed by Inventa Ltd. and others. (D.I. 99 at 1, 6) Lithium thereafter took the position that these parties enjoyed senior lien status over Plaintiffs based on the filings. (*Id.* at 6-7)

On September 5, 2014, Plaintiffs filed a Motion for Order to Show Cause as to why Lithium and the Non-Parties should not be held in civil contempt for violating the Status Quo Order and injunction, and why the UCC statements should not be expunged. (D.I. 115 at 1; D.I. 43) At a hearing held on March 2, 2015, the Court ordered the UCC statements expunged, found the respondents in contempt, and held respondents "jointly and severally liable to pay all of plaintiffs' reasonable attorney fees and costs associated with this contempt proceeding." (D.I. 115 at 2; D.I. 119 Ex. A)

The Court requested that the parties submit an agreed-upon form of Order and submit it by March 6, 2015. (D.I. 119 at 1) After failing to reach an agreement with Plaintiffs on attorneys' fees, the Non-Parties requested briefing on the matter. (*Id.*) The Court granted the request, adding: (1) the Court would be unlikely to find the requested fees "patently unreasonable;" (2) the Court would likely grant a request for additional fees and costs associated with the briefing on the fee dispute; and (3) the Court would award Plaintiffs at least $100,000.00, an amount the Non-Parties had proposed to pay. (D.I. 114; D.I. 119 at 3)

Plaintiffs request $315,218.23 for their work on the contempt proceeding, plus additional fees and costs of $49,189.00 in connection with the fee dispute. (D.I. 123 at 10) The Non-Parties do not appear to dispute that the Court should award Plaintiffs' requested fees and costs that the Non-Parties agree are "associated with th[e] contempt proceeding" but they do object to Plaintiffs recovering any fees or costs associated with Lithium's bankruptcy proceedings or the efforts to settle the case in this Court. (D.I. 119 at 4, 9)

## III. LEGAL STANDARDS

The Court has wide discretion in determining sanctions in a civil contempt matter. *See Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992). In exercising its discretion, the Court must "inevitably . . . engage in a fair amount of 'judgment calling' based upon its experience with the case." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989). "Sanctions for civil contempt serve two purposes: to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994).

## IV. DISCUSSION

For the reasons stated below, the Court will grant Plaintiffs' fee request in full, including all additional fees and costs incurred in connection with this fee dispute.

### A. Show Cause Motion

After discovering that UCC-1 Financing Statements had been filed while the Status Quo Order was still in effect, Plaintiffs' counsel commenced a thorough investigation into the matter. (D.I. 115 at 3) After trying unsuccessfully to resolve the issue with opposing counsel, Plaintiffs decided to file the Motion for Order to Show Cause. (*Id.* at 4) Plaintiffs' counsel commenced

3

post-judgment discovery, reviewing numerous documents in the process, while Defendant's counsel remained uncooperative. (*Id.* at 4-5) The Court scheduled a hearing on the matter for January 6, 2015. (*Id.* at 5) In the weeks leading up to the hearing, Defendant continued to ignore production requests and made numerous objections, leading to an Order for compliance and sanctions entered on December 1, 2014. (*Id.* at 6; D.I. 75)

### B. Bankruptcy Filing and Stay Relief Motion

Lithium and the Non-Parties continued to hinder discovery and delay depositions. Then, on December 5, 2014, Lithium filed a Chapter 11 bankruptcy petition in the Eastern District of Virginia. (D.I. 115 at 6-7) Attorney David Bowles, who had filed the UCC statements for Lithium, refused to appear for his scheduled deposition, claiming it was stayed by the bankruptcy filing. (*Id.* at 7) Depositions of Mr. Köster and Mr. Norton-Standen were also delayed. (*Id.*)

Plaintiffs contend, and the Court agrees, that the bankruptcy filing "on the eve of depositions" required Plaintiffs to undertake significant additional work and to incur legal fees. (*Id.* at 8) After researching the relevant bankruptcy issues, Plaintiffs decided to file in the bankruptcy court a Motion for Relief from the Automatic Stay and a request that it be heard on an expedited basis. (*Id.*) Lithium contested both the motion and the expedited hearing. (*Id.*) At the Bankruptcy Court hearing on December 23, 2014, Plaintiffs were granted relief from the stay. (*Id.*)

### C. Contempt Hearing

This Court rescheduled the contempt hearing to March 2, 2015. (D.I. 89) The Inventa parties filed a brief four days before the hearing, requiring Plaintiffs' counsel to draft a response in a short time frame. (*See* D.I. 105; D.I. 115 at 10) The Non-Parties also filed a letter the

evening before the hearing, requiring additional last-minute preparation by Plaintiffs. (*See* D.I. 108; D.I. 115 at 10)

In light of these facts and the declarations submitted by Plaintiffs, the Court finds Plaintiffs have properly supported their requested fees with evidence of the reasonableness of the work performed, hourly rates, and level of skill and expertise of the attorneys who performed the work. (*See* D.I. 116-118, 124; *see also Brytus v. Sprang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) (describing lodestar method to calculate reasonable fees))[2]

As Plaintiffs correctly point out, the Non-Parties "have not challenged the reasonableness of the rates charged by Plaintiffs' counsel nor the amount of time billed by Plaintiffs' counsel." (D.I. 123 at 1) Instead, the Non-Parties' opposition consists solely of objections to two categories of fees for which Plaintiffs' seek reimbursement: (i) fees associated with the bankruptcy proceedings, and (ii) fees associated with settlement efforts. The Court addresses these objections below.

### D. The Non-Parties' Objection

The Non-Parties argue that fees should not be granted for work performed in connection with the stay relief proceedings in Bankruptcy Court or any settlement discussions. (D.I. 119 at 3) They ask the Court to adopt a narrow reading of the phrase "associated with this contempt proceeding" from its ruling on March 2, 2015. (*Id.* at 4-5) The Court finds that all of the work

---

[2]The record includes Declarations of Attorneys Melvin A. Simon, lead counsel; Theodore J. Tacconelli, Delaware counsel; and J. David Folds, bankruptcy counsel in the Eastern District of Virginia. The Court agrees with Plaintiffs that "[e]ach of the Declarations provide[s] evidence of the skill, experience and reputation of counsel and the Declarations of Attorneys Tacconelli and Folds respectively provide evidence of prevailing hourly rates in the District of Delaware and the Eastern District of Virginia." (D.I. 115 at 11)

for which Plaintiffs request fees and costs, including the categories to which the Non-Parties object, was reasonable, relevant to the contempt proceeding, and necessitated by the actions of Lithium and the Non-Parties. These actions include their consistent lack of cooperation in discovery and Lithium's bankruptcy filing.

### 1. Bankruptcy proceedings

The Non-Parties argue that relief from the automatic stay with respect to Lithium was unnecessary and that Plaintiffs could have obtained an adequate remedy in Bankruptcy Court. (*Id.* at 5) Contrary to the Non-Parties' assertions, Plaintiffs were not merely asking for senior lien status, but also for the UCC statements to be expunged and the District Court's status quo and contempt Orders to be enforced. This Court unquestionably has the power to enforce its own Orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966). Plaintiffs could only obtain their full desired relief from this Court, so the Bankruptcy Court could not have provided a full and adequate remedy.

Yet only the Bankruptcy Court could provide relief from the automatic stay – and Plaintiffs' conclusion that it needed such relief in order to pursue the full remedies to which it was entitled in this Court was an entirely justified conclusion. The Court disagrees with the Non-Parties' contention that Plaintiffs' stay relief motion was an unnecessary "tactical decision." (D.I. 119 at 6) Plaintiffs reasonably determined that relief from the stay was needed in order to properly continue with discovery in the contempt proceeding. Mr. Bowles himself used the stay as an excuse to cancel his deposition.

Moreover, the Court held Lithium and the Non-Parties jointly and severally liable for Plaintiffs' attorneys' fees, further supporting the reasonableness of Plaintiffs' conclusion that it

was best to proceed against Lithium and the Non-Parties simultaneously in this Court. The Court agrees with Plaintiffs when they explain: "The concerted contemptuous conduct by Lithium and the Non-Party Contemnors was so intertwined that it would have been inefficient and ineffectual to pursue separate hearings." (D.I. 123 at 5) Plaintiffs reasonably determined that they should seek relief in Bankruptcy Court before continuing discovery – so that discovery could include discovery from Lithium – and they reasonably determined that an expedited hearing was necessary in light of the upcoming contempt hearing, which at the time was scheduled in this Court for January 6, 2015. Lithium opposed both the stay relief motion and the request for an expedited hearing, requiring additional work by Plaintiffs.

After obtaining relief from the automatic stay, Plaintiffs obtained discovery from Lithium, which was among the evidence it relied on in persuading this Court at the March 2015 hearing to award Plaintiffs' requested relief. These results further confirm the reasonableness of Plaintiffs' approach, as well as the connectedness between the bankruptcy proceedings and the contempt proceedings.

In sum, the Court is persuaded that "[r]elief from the automatic stay was crucial to the Plaintiffs' investigation and preparation of [their] contempt motion." (*Id.* at 7) Hence, the Court finds that Plaintiffs are entitled to their requested fees and costs in connection with the bankruptcy proceeding.

### 2. Settlement discussions

The Non-Parties also argue that Plaintiffs should not be awarded fees or costs related to settlement discussions. (D.I. 119 at 7-8) At a minimum, they ask that settlement discussions related to the bankruptcy case be excluded. (*Id.*)

The Court agrees with Plaintiffs that their work related to the settlement discussions was necessitated by the contemptuous conduct of Lithium and the Non-Parties. (D.I. 123 at 8) Absent the contempt, there would have been no need to try to settle. Given the contempt they encountered, and the consequent need to file a Motion for Order to Show Cause, Plaintiffs were required by this Court's Local Rules to make "a reasonable effort . . . to reach agreement with the opposing party on the matters set forth in the motion." D. Del. LR 7.1.1. Under the circumstances, not requiring Defendants to reimburse Plaintiffs for Plaintiffs' fees and costs incurred in attempting to reach a settlement would leave Plaintiffs worse off, which would be an unfair and unjustified result here.

As discussed above, the Court has broad discretion in fashioning a remedy in this civil contempt proceeding. Accordingly, the Court finds that Plaintiffs are entitled to all requested fees and costs in connection with settlement discussions.

## V. CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' requested fees and costs in their entirety, including all additional fees and costs incurred by Plaintiffs in connection with this fee dispute. An appropriate Order follows.